IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID L. BOGLE                                          PLAINTIFF

v.                      CASE No. 07-CV-5101

WILLIAM F. JACKSON and
ALEXANDER C. PRZYGODA,
Individually and d/b/a
JACKSON GALLERIES                                       DEFENDANTS

<u>ORDER</u>

This action stems from a business relationship between the Plaintiff and the Defendants where the Plaintiff purchased four different artifact collections from the Defendants.  Before the Court are the Defendants' Motion to Dismiss and  Memorandum in Support (Doc. 14-1), Plaintiff's Response to Motion to Dismiss (Doc. 15) and Brief in Support (Doc. 16-1) and Defendants' Reply Memorandum (Doc. 17).  The Defendants filed suit against the Plaintiff in Montgomery County, Kentucky Circuit Court ("the Kentucky action") for slander, slander per se, libel, libel per se, false light, tortuous interference with business relations and outrage relating to the sale of the artifact collections. The Plaintiff filed this action seeking recision of the contract for the sale of the collections and damages in the Western District of Arkansas on June 1, 2007.  For the reasons stated herein, Defendants' Motion to Dismiss is **DENIED.**

## A. Background

Defendant, William Jackson, owner and operator of Jackson Galleries, along with his stepson, Defendant Alexander Przygoda, sold four collections of artifacts to the Plaintiff in 2004. On August 14, 2004, the Plaintiff purchased artifacts known as the "Stringer" and "Perino" collections for $53,000.00 and the "Anderson Folsom" collection and "Dove Tail" for $29,000.00, based on the Defendants assertions and representations that they were authentic ancient Indian artifacts. In September 2004, the Plaintiff, his wife and Jim Bennett, who is referred to as an artifact expert, traveled to Mt. Sterling, Kentucky to view a portion of Defendants' collection. On September 25, 2004, the Defendants brought their entire collection to the Plaintiff's home in Bentonville, Arkansas. The Plaintiff and Jim Bennett spent hours trying to determine the value of the collection. On the afternoon of September 26, 2004, at his home in Bentonville, Arkansas, the Plaintiff made the Defendants an offer for the Defendants' entire collection ("Jackson Collection"). The Defendants declined the offer, and made a counter-offer. On September 27, 2004, while the Defendants were packing up the artifacts, the Plaintiff accepted the counter-offer, and purchased the Jackson Collection, consisting of approximately 4,000 pieces, for a purchase price of $881,889.61. The Plaintiff took the Defendants to the Bank of Bentonville, in

-2-

Bentonville, Arkansas, and had a Cashier's Check issued for $861,889.61, which was the purchase price, less an agreed $20,000.00 which would be retained until the Certificates of Authenticity were delivered.  An additional $20,000.00 was paid to the Defendants in February 2005.

  Since 2004, the collection has been examined by authenticators in the industry and the authenticity of some artifacts has been called into question.  Approximately 439 pieces of the Jackson Collection are stated to be reproductions or modernly altered, with a loss of value of $456,577.12, which represents over 50% of the value of the entire Jackson Collection.  The remaining artifacts within the collection are now undesirable to the Plaintiff.  On March 16, 2007, the Defendants filed suit against the Plaintiff in Montgomery County, Kentucky Circuit Court for slander, slander per se, libel, libel per se, false light, tortuous interference with business relations and outrage relating to the sale and examination of the artifact collections.  The Plaintiff unsuccessfully challenged the jurisdiction and venue of the Kentucky action, with the court overruling his motion to dismiss on May 25, 2007.  On June 1, 2007, the Plaintiff filed this action seeking recision of the contract based upon breach of contract, negligence, fraud, tort of bad faith and unjust enrichment.  On October 1, 2007, the Defendants filed a Motion to Dismiss for lack of personal

AO72A
(Rev. 8/82)

jurisdiction and/or improper venue, and additionally, asked the Court to abstain from asserting jurisdiction over this matter as the subject matter was already the subject of an action filed in Kentucky.  On October 12, 2007, the Montgomery County, Kentucky Circuit Court overruled the Plaintiff's motion for reconsideration.  A trial was set for April 12, 2008.

**B.   Discussion**

In the motion to dismiss, the Defendants contend that their contacts with Arkansas are not sufficient to subject them to personal jurisdiction in this state.  The Plaintiff argues that this Court has jurisdiction over the parties pursuant to the Arkansas Long Arm Statute found at Ark. Code Ann. § 16-4-101 and 28 U.S.C.A. § 1332.  The Arkansas Long Arm Statute provides that the state of Arkansas will have personal jurisdiction of all persons to the maximum extent permitted by the due process clause of the Fourteenth Amendment.  *International Shoe Co. v. Washington,* 326 U.S. 310, (1945) is the seminal case on personal jurisdiction and the due process clause.  In *International Shoe*, the United States Supreme Court expanded the limits of state jurisdiction over nonresident defendants, while continuing to recognize the due process limitations on that power.  The Court looked to the nature of the contacts that the nonresident defendant had with the forum state, analyzing the "quality and nature" of those contacts, and whether or not the defendant

-4-

through those contacts enjoyed the "benefits and protection" of the laws of the foreign state. *Id.* at 319.  The Court held that the assumption of personal jurisdiction over a nonresident was based on a two-part test which requires "minimum contacts" by the nonresident defendant in the forum state and that such jurisdiction does not offend "traditional notions of fair play and substantial justice". *Id.* at 316.  The Supreme Court later held that the minimum contacts requirement can be established if the nonresident's contacts with the forum state are such that the defendant could "reasonably anticipate being haled into court there." *Worldwide Volkswagen Corp. v. W*oodsen, 444 U.S. 286 (1980).

   The minimum contacts requirement of the long arm statute has been interpreted by many courts.  The Supreme Court has held that contact with the forum state resulting from a contract that had a substantial connection to the state is sufficient. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174 (1985). Arkansas courts have held that a single contract is sufficient when there is a substantial connection between the contract and the forum state. *Ganey v. Kawasaki Motors Corp., U.S.A.,* 366 Ark. 238 (2006).  The Eighth Circuit Court of Appeals has identified five factors to consider in determining whether a defendant has established minimum contacts with a state: 1) the nature and quality of the contacts with the forum state; 2) the

-5-

quantity of the contacts with the forum state; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its resident; and 5) the convenience or inconvenience to the parties. *Dakota Industries v. Dakota Sportswear,* 946 F.2d 1384, 1390 (8th Cir. 1991).

In considering these factors, the Court finds that, although the Defendants' only contact with the state was on one occasion, that one contact was significant to the transaction at issue. The purpose of the contact was to conduct a business transaction which involved a large amount of money. The Defendants traveled to Arkansas and remained several days to sell their artifact collection to the Plaintiff. During their stay in Arkansas, the Defendants displayed, negotiated, and consummated the sale of their artifact collection to the Plaintiff for $881,889.61. The Court finds that the Defendants' presence in Arkansas relates directly to the cause of action before this Court. The Court finds that the Defendants had such contact with the state and that they could have reasonably anticipated being the subject of litigation here. This Court has personal jurisdiction over the Defendants and the Court finds that venue is proper, pursuant to 28 U.S.C.A. § 1391(a)(2), as a substantial part of the events or omissions giving rise ro the action took place in this state.

The Defendants contend this Court should abstain from exercising its jurisdiction in this matter. They assert that

-6-

AO72A
(Rev. 8/82)

the claims made in this action are clearly compulsory counterclaims and that the Court should abstain to avoid "piecemeal litigation". Generally, "the pendency of a state court proceeding is not a bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland,* 217 U.S. 268, 282 (1910). The Supreme Court has stated that federal courts should surrender their jurisdiction in favor of pending state actions only where "there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp.,* 460 U.S. 1, 25-26 (1983). The fact that the Plaintiff did not raise this claim in the pending Kentucky proceeding is not dispositive and the Court is not required to dismiss the action for the sole reason that the claim is a compulsory counterclaim under Kentucky state law. *See generally Truserv Corp. V. Flegles, Inc.,* 419 F.3d 584, 588 (7th Cir. 2005).

In determining the appropriateness of abstention in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums. *See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), Brillhart v. Excess*

*Ins. Co., 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620, 1625 (1942), and Pacific Live Stock Co. v. Oregon Water Bd., 241 U.S. 440, 447, 36 S.Ct. 637, 640, 60 L.Ed. 1084, 1096 (1916).* No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. *See Landis v. North American Co., supra, 299 U.S. at 254-255, 57 S.Ct. at 165-166, 81 L.Ed. at 158.* Only the clearest of justifications will warrant dismissal and the Court finds no justification for abstaining from exercising jurisdiction in this case.

## C.  Conclusion

Accordingly, the Defendants' Motion to Dismiss is **DENIED**. The Defendants have **10 days** within which to file an answer.

**IT IS SO ORDERED** this 13th day of November, 2007.

/s/ Robert T. Dawson
Robert T. Dawson
United States District Judge

-8-